## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

JOHN ELTON PIPER,

      Plaintiff,

v.                                      Case No.  5:19-cv-570-TKW/MJF

CARLOS DEL TORO,[1]

      Defendant.

_____/

## REPORT AND RECOMMENDATION

In this employment-discrimination and retaliation case brought pursuant to the Age Discrimination in Employment Act and the Civil Service Reform Act, Plaintiff has moved for partial summary judgment, Doc. 39, and Defendant likewise has moved for partial summary judgment, Doc. 37. For the reasons set forth below, Plaintiff's motion for partial summary judgment should be denied, Defendant's motion for partial summary judgment should be granted, and the District Court *sua*

---

[1] Carlos Del Toro is the Secretary of the Navy. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carlos Del Toro is automatically substituted as Defendant. Fed. R. Civ. P. 25(d).

*sponte* should grant summary judgment for Defendant as to Plaintiff's Civil Service Reform Act claim.[2]

## I. BACKGROUND

Plaintiff, who served as a civilian employee of the United States Navy, commenced this employment-discrimination and retaliation case against Defendant after Defendant placed Plaintiff on a Formal Performance Plan ("FPP") and terminated his employment. Plaintiff alleges that these actions constituted disparate-treatment discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; retaliation in violation of the ADEA; and unlawful termination in violation of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 4303. For relief, Plaintiff seeks back pay and other compensatory damages.

The information below is drawn from the evidence in the summary judgment record. When the parties offer conflicting accounts of the events in question, the undersigned sets forth the facts, drawn from the evidence presented, "in the light most favorable to the non-moving party on each motion." *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021)

---

[2] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

(quoting *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012)). Matters stated as "facts" for purposes of summary judgment review may, therefore, not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

A.    **Structure of the Naval Surface Warfare Center, Panama City Division**

On April 11, 1999, Dr. Kerry Commander hired Plaintiff to work as a scientist at the Naval Surface Warfare Center, Panama City Division ("NSWC PCD"). Doc. 36-1 ¶ 4; Doc. 36-4 p. 26 lines 9-12. Dr. Commander was forty years old when he hired Plaintiff. *See* Doc. 36-1 ¶ 2.

The NSWC PCD is one of eight Naval Surface Warfare Centers in the United States and is operated under the Naval Sea Systems Command ("NAVSEA"). NAVSEA is responsible for procuring, engineering, building, and sustaining ships, submarines, and related combat systems. It also provides research, development, testing, evaluation, and life cycle sustainment support within their respective mission areas.

Under the National Defense Authorization Act of Fiscal Year 1995, Congress authorized the Secretary of Defense to conduct a demonstration project at certain Department of Defense ("DOD") laboratories. The NSWC PCD is designated as a DOD laboratory. Doc. 36-1 ¶ 8. Thus, the NSWC PCD and its employees, including Plaintiff, fall under the Science and Technology Reinvention Laboratory Personnel

Demonstration Project at the NAVSEA Warfare Centers ("Personnel Demo Project"). This Personnel Demo Project was required to be published in the Federal Register, which was accomplished on December 3, 1997. *See* 62 Fed. Reg. 64,050-64,071 (Dec. 3, 1997).

The Personnel Demo Project had a two-tier performance rating system of employees: "acceptable" and "unacceptable." Doc. 36-1 ¶ 12. An employee's performance could not be found "unacceptable," unless the employee had failed an FPP. *Id.* ¶ 13. On the other hand, a supervisor could award an employee with "acceptable" performance anywhere between zero (low) to four (high), continuous pay, and/or bonus points. *Id.* ¶ 15. Even when an employee had "acceptable" performance, the supervisor could find that the employee did not merit a performance-based pay raise or bonus. *Id.* ¶ 14.

**B.     Plaintiff's Employment History**

From 1999 through 2010, various individuals supervised Plaintiff. From August 29, 2010 through May 3, 2017, Dr. Frank Crosby was Plaintiff's first-level supervisor.[3] Dr. Crosby was also Plaintiff's second-level supervisor from October 30, 2016 through May 3, 2017. Doc. 36-2 ¶¶ 2-3. From March 2011 through

---

[3] When he was Plaintiff's supervisor, Dr. Crosby was in his forties. Doc. 36-2 ¶¶ 2-3.

September 2018, Dr. Commander was Plaintiff's third-level supervisor and head of the department.

Between 2000 and 2008, Plaintiff received positive feedback from his supervisors. Doc. 34-4. Feedback includes awarding "bonus points." A supervisor could award an employee with acceptable performance anywhere between zero (low) to four (high) "continuous pay and/or bonus points." Doc. 36-1 ¶ 15. Plaintiff's work performance resulted in "zero continuous pay points based upon performance for Fiscal Years 2011, 2012, 2013, 2014, 2015, and 2016." Doc. 36-2 ¶ 7. From 2010 through 2014, Plaintiff's supervisors awarded Plaintiff only one bonus point based on Plaintiff's work performance for 2011, and less than one bonus point for 2012 and 2014. *Id.* ¶ 8.

Project managers sometimes removed Plaintiff from projects because Plaintiff failed to do what the project leaders required. *Id.* ¶ 4. For example, in fiscal year 2013, Plaintiff worked on the "Venture Hazard for the Defense Threat Reduction Agency" project. Doc. 36-3 ¶ 3. On June 6, 2013, Plaintiff's project manager—Dr. Keith Aliberti—advised Dr. Crosby that Plaintiff's "level of performance over the past 5-6 months has been absolutely minimal and his brief wasn't well received." *Id.* ¶ 4. Dr. Aliberti concluded that the team did not need Plaintiff's support on that project. *Id.*

Additionally, from fiscal year 2011 through fiscal year 2016, Dr. Crosby repeatedly counseled Plaintiff on the need to improve his work performance. Doc. 36-2 ¶ 6; Doc. 36-4 p. 58 lines 3-5. Plaintiff, however, was not receptive to performance feedback. Doc. 36-2 ¶ 6.

C.    **Plaintiff's 2015 EEO Complaint**

On June 18, 2015, a selection committee did not select Plaintiff for a "high grade position." Doc. 36-4 p. 60 lines 7-12, p. 61 lines 12-17, p. 62 lines 2, 19-21; Doc. 36-12 at 1. Instead, the selection committee selected Dr. James Prader, who was over the age of 40. Doc. 36-4 p. 63 lines 2-8. On October 23, 2015, Plaintiff sought counseling from the Department of the Navy's Equal Employment Opportunity ("EEO") Office alleging that he was discriminated against on the basis of his age in the hiring process. On October 17, 2016, the Navy's EEO Office issued a decision in which it found that Plaintiff had suffered no discrimination. Doc. 36-12.

D.    **The Continuous Transmission Frequency Modulated Synthetic Aperture Sonar Project**

In fiscal year 2013, the NSWC PCD commenced a two-year research project called the "Continuous Transmission Frequency Modulated Synthetic Aperture Sonar Project" ("the Project"). Doc. 36-2 ¶ 9. The goal of the Project was to write a technical report and program regarding a long-range sonar beamformer ("the

Deliverables"). Doc. 36-7 at 1. The initial deadline for the Project was September 2014. Doc. 36-8 at 2 ¶ e. Originally, Dr. Tim Marston was the principal investigator on the Project, but he resigned in fiscal year 2013, to work for the University of Washington. Doc. 36-1 ¶ 18. In fiscal year 2014, the Project was reported to be "promising" based on Dr. Marston's successful efforts in fiscal year 2013. Doc. 36-2 ¶ 10.

In approximately March 2014, Plaintiff became the principal investigator on the Project, which means that he was the primary contributor and Project Lead for fiscal year 2014. Doc. 36-1 ¶ 19; Doc. 36-2 ¶ 12. Before becoming the principal investigator on the Project, Plaintiff had conducted research on Aperture Sonar and authored an End of Year Report entitled "Broadband Beamforming." Doc. 36-2 ¶ 13; Doc. 36-4 p. 26 lines 14-15, p. 31 lines 2-4. This area of study, therefore, was not new to him.

Because of the change in personnel in fiscal year 2014 and the report that the Project was "promising," the NSWC PCD X Department leadership granted Plaintiff an extension to complete the Project. Doc. 36-2 ¶ 11. With this extension, the Project was scheduled to be completed by the end of fiscal year 2015 (*i.e.*, September 2015). Doc. 36-2 ¶ 11; Doc. 36-8 at 2 ¶ e. At the end of fiscal year 2015, however, Plaintiff still had not completed the Project. Doc. 36-2 ¶ 14; Doc. 36-7 at 1. Plaintiff requested an additional extension of the deadline into fiscal year 2016. NSWC PCD X

Department leadership granted Plaintiff's request for an extension of the deadline. Doc. 36-2 ¶ 14; Doc. 36-7 at 6 (noting that the extension was for the first half of fiscal year 2016); Doc. 36-8 at 2 ¶ e (noting that the task deadline was extended until January 2016).

In March 2016, during the fiscal year 2016 mid-year project review, Plaintiff reported that the Project was behind schedule and out of money.[4] He also reported that the Deliverables were "overdue." Doc. 36-2 ¶ 15. Plaintiff submitted a technical report in September 2016, but Dr. Crosby did not sign the technical report because Dr. Crosby believed that Plaintiff's writing style was unprofessional, including Plaintiff's statement that internet search engine results constituted proof of scientific validity. Doc. 40-1 ¶ 2.[5]

**E.**    **Plaintiff's Placement on the FPP and His Eventual Termination**

On December 13, 2016, Dr. Crosby emailed the NSWC PCD's human resources department to express his intent to place Plaintiff on an FPP. Doc. 36-2

---

[4] Although they dispute the extent to which the Project was behind schedule, the parties agree that at the time of the fiscal year 2016 midyear review, the Project had not progressed as scheduled. Doc. 33 at 3.

[5] Plaintiff does not dispute that Dr. Crosby did not submit the technical report for publication. Plaintiff contends, however, that his writing was professional, and he asserts that a technical writer was assigned to help with the writing. But Plaintiff does not point to any evidence in the record which indicates that a technical writer assisted in drafting the report. Doc. 41 at 2.

¶ 17. On January 6, 2017, Dr. Crosby placed Plaintiff on the FPP to resolve Plaintiff's performance deficiencies. *Id.* ¶ 18; Doc. 36-7.

The FPP tasked Plaintiff with completing within 60 days two assignment that were based on undergraduate numerical analysis. Doc. 36-2 ¶ 20; Doc. 36-7. The FPP also included specific instructions, conditions, processes, and requirements for Plaintiff. Doc. 36-7 at 1-4. The FPP warned Plaintiff that if Plaintiff's performance was deemed unacceptable, Dr. Crosby would propose a personnel action of removal or "reassignment/demotion." *Id.*

On March 7, 2017, the FPP ended, and Dr. Crosby provided a summary and evaluation of the FPP outcome to Plaintiff. Doc. 36-7 at 36-44. On March 31, 2017, Dr. Crosby found Plaintiff's performance to be unacceptable, issued a "Notice of Proposed Removal for Unacceptable Performance," and placed Plaintiff on administrative leave. Doc. 36-2 ¶¶ 22-24; Doc. 36-8. In the "Notice of Proposed Removal for Unacceptable Performance," Dr. Crosby cited approximately eight instances of unacceptable performance. Doc. 36-8 at 4-5.

On May 2, 2017, Dr. Commander sustained the decision to fire Plaintiff based on Dr. Crosby's "Notice of Proposed Removal for Unacceptable Performance" and Plaintiff's failure to complete the two assignments in the FPP. On May 3, 2017, Defendant terminated Plaintiff's employment. Doc. 36-1 ¶ 20. The notification of

personnel action indicated that the basis of Plaintiff's termination was "performance." Doc. 34-1; Doc. 36-1 ¶¶ 20-21.

**F.   Plaintiff's 2017 EEO Complaint**

On March 6, 2017, Plaintiff again sought counseling from the Navy's EEO Office. Doc. 36-5 at 1; Doc. 36-6 at 2. Plaintiff alleged that Dr. Crosby placed Plaintiff on the FPP on January 6, 2017, because of Plaintiff's age (66 years old) and in retaliation for Plaintiff's 2015 EEO complaint.

After the parties were unable to resolve this issue informally, on March 10, 2017, Plaintiff submitted a formal complaint of discrimination to the Navy's EEO Office. Doc. 36-6. After the Navy terminated Plaintiff's employment in May 2017, Plaintiff amended his claim of discrimination to include a claim that Defendant had fired Plaintiff in retaliation for Plaintiff's 2015 EEO complaint. Doc. 36-11.

On September 11, 2019, an Equal Employment Opportunity Commission ("EEOC") administrative law judge ("ALJ") issued a decision granting the Navy's motion to dismiss in part, but remanding Plaintiff's discriminatory termination claim to the Navy's EEO Office for further processing because it was a "mixed case" complaint.[6] Doc. 36-9. On May 3, 2020, the Navy's EEO Office issued a final

---

[6] It is unclear which claims the ALJ dismissed insofar as the parties did not include the motion to dismiss in the record and the ALJ's decision also does not include this information.

decision in which it concluded that the Department of the Navy had not "discriminate[d] against [Plaintiff] based on reprisal."[7] Doc. 36-10 at 10.

## II. STANDARD

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[7] This decision focused only on Plaintiff's claim that Plaintiff was terminated in violation of the ADEA's anti-retaliation provision.

### III. DISCUSSION

**A.    Plaintiff's Claim That Defendant Violated the CSRA Fails as a Matter of Law**

Plaintiff moved for summary judgment on Count One of his complaint. Doc. 39 at 1. Defendant argues that Plaintiff failed to state a claim upon which relief can be granted under the CSRA, 5 U.S.C. § 4303. Doc. 41 at 2.

### 1. *Framework for Reviewing Mixed-Cases Under the CSRA*

The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). Specifically, the CSRA provides that the Merit System Protection Board ("MSPB") has jurisdiction over appeals of specific "adverse employment actions" affecting federal civil servants, including termination of employment. *Chappell v. Chao*, 388 F.3d 1373, 1375 (11th Cir. 2004); *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir. 1998). Thus, Plaintiff's claim that he was removed from his position in violation of 5 U.S.C. § 4303 is a personnel action that he could have appealed to the MSPB. *See Cruz v. Dep't of Army*, 122 F. App'x 452, 457 (Fed. Cir. 2005); *Pat. Off. Prof. Ass'n v. Fed. Labor Rels. Auth.*, 26 F.3d 1148, 1156-57 (D.C. Cir. 1994); *Harrison v. Bowen*, 815 F.2d 1505, 1510 (D.C. Cir. 1987).

Plaintiff also claims, however, that the Navy terminated him in violation of the ADEA. "When an employee complains of a personnel action serious enough to

appeal to the MSPB *and* alleges that the action was based on discrimination, [he] is said (by pertinent regulations) to have brought a 'mixed case.'" *Perry v. MSPB*, 582 U.S. __, 137 S. Ct. 1975, 1980 (2017) (quoting *Kloeckner*, 568 U.S. at 44); *Chappell*, 388 F.3d at 1375.

Generally, when a federal agency's EEO office issues an adverse decision, a federal employee may seek review of that decision by filing a suit against the agency in a federal district court. 5 U.S.C. § 7702(a)(2); *Perry*, 137 S. Ct. at 1980; *Doyal v. Marsh*, 777 F.2d 1526, 1535 (11th Cir. 1985); *see Best v. Adjutant Gen., State of Fla., Dep't of Mil. Affs.*, 400 F.3d 889, 891 (11th Cir. 2005).[8] That is what Plaintiff did here.

Under the standard of review most favorable to Plaintiff, Plaintiff is required to demonstrate that the Navy's decision to terminate his employment was: (1) not supported by substantial evidence; (2) a result of a harmful error in the application of the agency's procedures in arriving at such a decision; (3) based on a prohibited

---

[8] Courts differ as to the proper standard of review that a district court should apply to the CSRA claim in "mixed cases" when the Plaintiff files a civil suit directly from an agency's EEO decision. *See e.g.*, *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 472 (6th Cir. 2003) (applying de novo review); *Greenhouse v. Geren*, 574 F. Supp. 2d 57, 66 (D.D.C. 2008) (de novo review for discrimination claims; arbitrary and capricious standard for nondiscrimination claims). Regardless, Plaintiff's CSRA claim fails as a matter of law under either standard of review. Plaintiff failed to allege—much less submit evidence supporting his claim—that the Navy EEO Office's decision was unsupported by substantial evidence, was made after failing to follow proper procedures, or was arbitrary or capricious. *See* 5 U.S.C. § 7703(c).

personnel practice; or (4) not in accordance with the law. *Diaz v. Dep't of Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995); 5 U.S.C. § 7701(c)(1)-(2).

### 2.    *Plaintiff Has Not Demonstrated That Dr. Crosby's Two Statements Amounted to Harmful Error*

Construing Plaintiff's claim liberally, it appears he is arguing that the Navy's personnel decision should be reversed because it was the result of a harmful error in the application of the agency's procedures.[9] Specifically, Plaintiff argues that two statements made by Dr. Crosby in the FPP are false: (1) "Beginning in FY-13 Plaintiff was tasked to work on Long Range SAS project . . ."; and (2) that Plaintiff "failed to complete the task as assigned." Doc. 28 ¶ 2; Doc. 39 at 1.

In order to establish harmful error sufficient to reverse an agency's action, the plaintiff must show that the agency's procedural error "substantially impaired the rights of the employee." *Brewer v. U.S. Postal Serv.*, 647 F.2d 1093, 1097 (Ct. Cl. 1981); 5 C.F.R. § 1201.4(r) (noting that a harmful error must cause substantial harm or prejudice to the employee's rights). Indeed, for an error to be harmful it must likely "have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." 5 C.F.R. § 1201.4(r). The harmful

---

[9] Plaintiff also asserts that the Navy's decision to remove him from federal service was a result of age discrimination in violation of the ADEA. As discussed below, however, Plaintiff's age discrimination claim fails. Thus, Plaintiff has also failed to establish that the Navy's decision to remove Plaintiff from federal service was based on prohibited personnel practices.

error rule was designed to "avoid reversal of agency actions because of technical procedural oversights which has not substantially prejudiced or impaired the employee." *Parker v. Def. Logistics Agency*, 1 M.S.P.R. 505, 514 (1980).

### (a). Dr. Crosby's Misstatement That Plaintiff Began Working on the Project in Fiscal Year 2013

As to Dr. Cosby's erroneous statement in the FPP that Plaintiff began working on the Project in fiscal year 2013, Plaintiff has not shown that this statement harmed Plaintiff in any way or that it failed to provide Plaintiff with sufficient notice that his performance was critically deficient. Plaintiff has not alleged, much less shown, that had Dr. Crosby correctly noted the date that Plaintiff began working on the Project—March 2014—it would have benefitted him or altered the agency's decision. *Handy v. U.S. Postal Serv.*, 754 F.2d 335, 338 (Fed. Cir. 1985).

The evidence in the record is clear that Dr. Crosby was dissatisfied with Plaintiff's work, regardless of when Plaintiff commenced working on the Project. It is undisputed that in the "Notice of Proposed Removal for Unacceptable Performance," Dr. Crosby acknowledged that Plaintiff "took over" the Project as "stated in [Plaintiff's October 2014] end-of-year report." Doc. 36-8 at 2 ¶ e. Additionally, Dr. Crosby's assessment that Plaintiff's performance was "unacceptable" was based on Plaintiff's conduct—namely Plaintiff's statements made during period task reviews that the Project was behind schedule and failure to

meet established deadlines—from 2014, 2015, and 2016. *Id.*; Doc. 36-7 at 2. Plaintiff has not shown how the correct date in the FPP would have affected the agency's decision to terminate Plaintiff.

**(b).**  **Dr. Crosby's Accurate Statement That Plaintiff Failed to Complete the Tasks "As Assigned"**

As for Dr. Crosby's second statement—that Plaintiff "failed to complete the task as assigned"—Plaintiff contends that this statement is false because Plaintiff finished the Project in September 2016 when he submitted the technical report. Doc. 36-4 p. 65 lines 20-25, 66 lines 1-22 (noting that he had finish the project in September 2016). Dr. Crosby's statement, however, was that Plaintiff "failed to complete the task *as assigned*." Doc. 36-7 at 1 (emphasis added). There is no dispute that "the tasks as assigned" by the Navy required completion of the Project by September 2015. Doc. 36-8 at 2 (noting that because of the change in leadership, Plaintiff was provided until September 2015 to complete the Project). There also is no dispute that in 2014 and 2015, Plaintiff reported that the Project was behind schedule. *Id.* Furthermore, there is no dispute that Plaintiff did not complete the Project by the end of fiscal year 2015. Doc. 36-8 at 2 ¶ e; Doc. 36-4 p. 65 lines 20-25, 66 lines 1-22.

Because Plaintiff did not complete the project by September 2015, the Navy was forced to extend the deadline of the project through January 2016. Doc. 36-8 at 2; *see* Doc. 36-2 ¶ 14 (noting that Plaintiff was granted an "extension into FY 2016").

Plaintiff failed to meet even that extended deadline. Doc. 36-7 at 1; Doc. 36-8 at 2 ¶ e. Furthermore, in March 2016, Plaintiff still had not completed the Project. Doc. 36-10 at 7 (indicating that by March 2016 the Project was overdue); Doc. 34-7 at 4 (noting that Plaintiff was projected to complete the project by end of fiscal year 2016). Indeed, Plaintiff did not submit a draft of the technical report—one of the two required "Deliverables"—*until September 2016*. Doc. 34-11; Doc. 36-4 p. 65 lines 20-25, 66 lines 1-22 (noting that Plaintiff had finished the project in September 2016); *see* Doc. 28 at 2 ¶ 2 (noting that it took him approximately 2.5 years to finish the project). Thus, even if Plaintiff ultimately completed the project, there is no dispute that he did not finish it *timely*.

The FPP identified untimeliness as one aspect of Plaintiff's deficient performance. Doc. 36-7 at 1, 6 (noting that Plaintiff's failure to timely finish the project "was troubling," had "impacted the mission of the Command," and "shows deficiency in employee performance"). Thus, Plaintiff has not submitted any evidence which indicates that Dr. Crosby's statement in the FPP that Plaintiff "failed to complete the task *as assigned*" is incorrect. Plaintiff certainly has not submitted evidence that this statement constitutes "harmful error" in any respect. *See Handy*,

754 F.2d at 338 (holding that the plaintiff could not establish harmful error when he failed to show how it could have possible affected the agency's decision); *Williams v. Lehman*, No. C.A. 82-1956, 1988 WL 118464, at *5 (D.D.C. Oct. 27, 1988) (finding no harmful error when "it is difficult to envision how" the two procedural errors harmed plaintiff "such that the outcome might have been different").

In light of the foregoing, the undersigned recommends that the District Court deny Plaintiff's motion for summary judgment on his CSRA claim and instead *sua sponte* grant summary judgment in favor of Defendant on this claim.[10]

## B.   Defendant is Entitled to Summary Judgment on Plaintiff's ADEA Discrimination Claim

Defendant moves for summary judgment on Plaintiff's age-discrimination claim. Doc. 37 at 2.

In the provision applicable to federal employees, the ADEA states: "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a); *see Babb v. Wilkie*, 589 U.S. ___, 140 S. Ct. 1168, 1172 (2020). To establish a defendant's liability, a federal-employee plaintiff must prove by a

---

[10] Defendant did not move for summary judgment on Plaintiff's CSRA claim, although in its response to Plaintiff's motion for partial summary judgment, Defendant argued that the District Court should dismiss this claim. Doc. 41 at 2. Plaintiff, of course, must be afforded an opportunity to be heard on this issue. Thus, he may address this issue in any objections to this report and recommendation.

preponderance of the evidence that age was the "but-for" cause of any *differential treatment*—not the *ultimate decision*—he received from the federal government employer. *Babb*, 140 S. Ct. at 1174; *DiCocco v. Garland*, 18 F.4th 406, 419 (4th Cir. 2021).[11] In other words, "the text of § 633a(a) requires that employment related decisions be untainted by differential treatment of employees identical in all respects but age." *DiCocco*, 18 F.4th at 419.

Here, Plaintiff did not present any direct evidence of age discrimination. Plaintiff, therefore, was required to submit sufficient circumstantial evidence to create a triable issue regarding his age-discrimination claim.[12] Specifically, Plaintiff

---

[11] The but-for causation analysis also remains "important in determining the appropriate remedy." *Babb*, 140 S. Ct. at 1177; *Babb*, *v. Sec'y, Dep't of Veteran Affs.*, 992 F.3d 1193, 1205 n.8 (11th Cir. 2021). Plaintiffs who "demonstrate only that they were subjected to unequal consideration cannot obtain reinstatement, backpay, compensatory damages, or other forms of relief related to the end result of an employment decision. To obtain such remedies, these plaintiffs must show that age discrimination was a but-for cause of the employment outcome." *Babb*, 140 S. Ct. at 1177-78; *Babb*, 992 F.3d at 1205 n.8.

[12] In an unpublished decision, a panel of the Eleventh Circuit held that "[b]ecause both the *McDonnell Douglas* framework and the convincing-mosaic test are methods of showing that the protected characteristic was the but-for cause of the ultimate decision, those tests no longer apply" in a public-sector employment discrimination case. *Durr v. Sec'y, Dep't of Veterans Affs.*, 843 F. App'x 246, 247 (11th Cir. 2021) (citing *Babb*, 992 F.3d at 1204); *see Babb*, 992 F.3d at 1204 ("Without quite saying as much, then, it seems that the Supreme Court accepted Babb's argument 'that the District Court should not have used the *McDonnell Douglas* framework.'"). Courts, however, have continued—at least in part—to analyze public-sector cases under these frameworks. *Troupe v. DeJoy*, 861 F. App'x 291, 293 (11th Cir. 2021).

was required to submit circumstantial evidence that the Navy's adverse employment actions with respect to Plaintiff were due at least in part to Plaintiff's age. Plaintiff points to four pieces of evidence which, he contends, create a triable issue sufficient to preclude summary judgment.

### 1.   *Comparison to Dr. Prater*

First, Plaintiff attempts to create a genuine issue by comparing himself to Dr. Prater, whose employment the Navy did not terminate despite the fact that Dr. Prater allegedly committed "fraud." Doc. 38 at 2-3. Plaintiff contends that Dr. Prater "fraudulently claimed as accomplished work a figure that was actually produced by Tim Marston" and, despite this, Dr. Prater received a "high-grade position" in fiscal year 2015. *Id.* at 3. Plaintiff, in contrast, was fired. *Id.*

Plaintiff concedes, however, that Dr. Prater was "in the same age-protected class." Doc. 42 at 4; Doc. 36-4 p. 63 lines 2-6. Dr. Prater, therefore, is not an appropriate comparator. *Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749, 752 (11th Cir. 2014); *see Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1227 (11th Cir. 2019); *Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1083 (11th Cir. 2005). Indeed, demonstrating that someone in the same age class as Plaintiff was treated more favorably by the Navy does not give rise to an inference that age was the reason for the Navy's treatment of Plaintiff. Rather, such evidence suggests that the Navy

treated Plaintiff as it did for some reason other than his age. In any event, comparison to Dr. Prater does not create a genuine issue of material fact.

### 2.    *Positive Feedback, Performance Reviews, and Bonuses*

Second, Plaintiff points to the fact that, from 2000 to 2008, his supervisors provided positive feedback and positive performance reviews, and in 2008, Plaintiff received "continuous pay" and "bonus pay."[13] Doc. 34-4. Furthermore, between 1996 and 2020, he published a number of articles. Doc. 33 at 4; Doc. 34-2. According to Plaintiff, these facts establish his competence and create the inference that Defendant terminated his employment because of his age. Doc. 33 at 4; *see* Doc. 38 at 3.

Evidence of satisfactory evaluations can belie an employer's assertion that the employee was fired for performance-related problems when the evaluations are temporally relevant. *See Abramson v. William Paterson Coll.*, 260 F.3d 265, 284 (3d Cir. 2001) (holding that a plaintiff established a genuine issue as to pretext because her evidence of favorable evaluations refuted the employer's assertion that she was discharged due to performance problems); *Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1120-21 (7th Cir. 1999) (same); *Felton v. City of Auburn*, 968 F. Supp. 1476, 1480

---

[13] The parties do not define the term "continuous pay."

(M.D. Ala. 1997) (noting that "consistently satisfactory performance ratings" were relevant to the pretext inquiry).

Plaintiff's positive reviews and positive feedback are from 2000 through 2008, however. Thus, they predate the commencement of Plaintiff's allegedly deficient performance by *more than three years*, and they predate the Navy's decision to terminate Plaintiff's employment by *more than eight years*. Doc. 36-1 ¶ 17; Doc. 36-2 ¶¶ 4-7; Doc. 36-3 ¶ 4; Doc. 36-8 at 4-5. Favorable performance evaluations "at some point in the past" are insufficient to negate an employer's "estimation that his performance was deficient at a later time." *Staples v. Pepsi-Cola General Bottlers, Inc.*, 312 F.3d 294, 300 (7th Cir. 2002); *see Dingman v. Delta Health Grp., Inc.*, 26 F. Supp. 2d 1349, 1354 (S.D. Fla. 1998) (noting that "prior positive reviews are not necessarily probative" of the defendant's subsequent problems with the plaintiff at the time of termination). In fact, during the relevant time frame, Plaintiff's supervisor, Dr. Keith Aliberti, described Plaintiff's level of performance as "absolutely minimal" and noted that Plaintiff's "brief wasn't well received." Doc. 36-3 ¶ 4. As a result, Dr. Aliberti concluded that Plaintiff's support was not needed on that project. *Id.*

This evidence, therefore, also is insufficient to create a genuine issue whether Defendant took Plaintiff's age into consideration when the Navy terminated his employment.

### 3.    *Google's Ranking of Plaintiff's Publications*

Plaintiff also argues that the internet search engine Google ranked one of Plaintiff's papers "#1 out of tens of millions using the search 'detection harmonic signals.'" Doc. 33 at 4; Doc. 34-3. Similarly, he points to Google's ranking of his 2011 book chapter "Beam Forming Narrowband and Broadband Signals." Doc. 33 at 4; Doc. 34-3. It is undisputed, however, that Defendant does not measure an employee's work performance, utility, or scientific accuracy based on results from a Google search or Google's ranking of that employee's articles. Doc. 36-2 at 5; *see* Doc. 40-1 ¶ 2. Google's favorable treatment of Plaintiff's publications does not create a genuine issue as to Defendant's "true" reason for its adverse employment actions regarding Plaintiff. Conclusory allegations and speculation are insufficient to create a genuine issue of material fact. *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016); *Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1294 (11th Cir. 2013). This evidence, therefore, also does not create a genuine issue to be resolved at a trial.

### 4.    *Dr. Crosby's Two "False" Statements in the FPP*

Plaintiff next repackages an argument discussed above. He argues that Dr. Crosby's statements in the FPP—that "Beginning in FY-13 Plaintiff was tasked to work on Long Range SAS project . . ." and Plaintiff "had failed to complete the task as assigned"—were false. According to Plaintiff, the falsity of these statements

indicate that Defendant considered Plaintiff's age in the personnel actions. Doc. 38 at 1.

As discussed above, these two statements do not demonstrate that anything was amiss with respect to Defendant's treatment of Plaintiff. The first statement appears simply to be an error. But even if it were an intentional misstatement, Dr. Crosby corrected this misstatement in the "Notice of Proposed Removal for Unacceptable Performance." Plaintiff has not put forth evidence indicating that it was anything but a minor misstatement or error on Dr. Crosby's part.

As to the second statement—according to the facts conceded by Plaintiff— that statement literally is true insofar as Plaintiff did not timely complete the Project, and thus he failed to complete the task "as assigned." But even if Plaintiff had timely completed the Project, the undisputed evidence indicates that Dr. Crosby and Dr. Commander honestly believed that Plaintiff had not timely completed the Project. "As long as an employer's beliefs were honest, they can be mistaken without it implying that the employer acted with discriminatory motive." *Schweers v. Montgomery Pub. Schs.*, 511 F. Supp. 2d 1128, 1137-38 (M.D. Ala. 2007) (citing *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002)). Plaintiff's mere speculation that Dr. Crosby and Dr. Commander terminated Plaintiff's employment due to his age is insufficient to create a genuine dispute of fact to defeat summary judgment. *Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002) (citing *Jameson v.*

*Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) (noting that "[b]elief, no matter how sincere, is not equivalent to knowledge," and is not sufficient to withstand summary judgment)).

Because Plaintiff has not shown that Defendant considered Plaintiff's age in any way in its decisions to place him on the FPP and terminate his employment, Defendant is entitled to summary judgment on Plaintiff's claim of discrimination. Furthermore, Plaintiff has not put forth sufficient evidence regarding but-for causation to create a genuine issue of material fact, which itself entitles Defendant to summary judgment on Plaintiff's claims to the extent that he seeks compensatory damages and back pay.[14]

## C. **Defendant is Entitled to Summary Judgment on Plaintiff's ADEA Retaliation Claim**

Defendant also moves for summary judgment on Plaintiff's ADEA retaliation claim. Defendant argues that Plaintiff cannot establish a prima facie case of retaliation and, even if he could, he cannot show that Defendant's legitimate, nondiscriminatory reasons were mere pretext. Doc. 37 at 2, 17-22.

---

[14] In order to obtain compensatory damages and back pay, a public-sector employee plaintiff must demonstrate that age discrimination was the but-for cause of the adverse employment actions that he suffered. *Babb*, 140 S. Ct. at 1177-78; *Babb*, 992 F.3d at 1205 n.8. Plaintiff seeks only compensatory damages and backpay.

Congress prohibits the federal government from retaliating against federal employees who complain of age discrimination. *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008); *see* 29 U.S.C. § 633a(a). To establish a prima facie retaliation claim, a plaintiff must submit sufficient evidence to create a genuine issue as to three elements: (1) he engaged in statutorily-protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally-related to the protected expression.[15] *Jefferson v. Sewon Am. Inc.*, 891 F.3d 911, 924 (11th Cir. 2018); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (citing *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)).

In order to establish the causation element, a plaintiff must demonstrate that: (1) the decision-maker was aware of the employee's protected conduct; and (2) the protected conduct and the adverse action were not wholly unrelated. *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008); *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action" and such awareness "is the minimum that a plaintiff must

---

[15] Federal courts must analyze public-sector retaliation claims under the causation standard articulated by the Supreme Court in *Babb*, 140 S. Ct. at 1168. *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 835 (11th Cir. 2021). Under that standard, a plaintiff must provide sufficient evidence for the jury to infer that the protected activity was the "but-for" cause of any differential treatment. *Babb*, 140 S. Ct. at 1174.

demonstrate to establish a *prima-facie* case of retaliation." *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993); *see Higdon*, 393 F.3d at 1220; *Simmons v. Camden Cnty. Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985).

A plaintiff must show that there is a "close temporal proximity between this awareness and the adverse . . . action." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.3 (11th Cir. 2003). Where mere temporal proximity is the primary evidence of causation, "the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1295 (11th Cir. 2021). Conversely, "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Higdon*, 393 F.3d at 1220; *Thomas v. Cooper Lighting Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Here, the protected activity—Plaintiff's act of filing an EEO complaint with the Department of Navy's EEO Office—occurred on October 23, 2015. The alleged first act of retaliation—Dr. Crosby placing Plaintiff on the FPP—occurred on January 6, 2017. Thus, approximately *fifteen months* passed between the protected activity and the first alleged act of retaliation. Doc. 36-7 at 1; Doc. 36-12 at 1. Additionally, there was nearly a *nineteen-month interval* between the filing of Plaintiff's EEO complaint and the second alleged act of retaliation: Plaintiff's

termination on May 3, 2017. Doc. 34-1; Doc. 36-12 at 1. This attenuation is too great to establish a causal connection. *See Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1029 (11th Cir. 2008) (concluding that a six-month separation was insufficient); *Thomas*, 506 F.3d at 1364 (concluding that a three-month separation was insufficient); *Higdon*, 393 F.3d at 1221 (same).

Plaintiff, however, asserts that the Project simply was "too important" to be left uncompleted, and because Plaintiff was the "only person that had the experience and skill set to successfully complete the project," Dr. Crosby and Dr. Commander intentionally waited to retaliate against him until he completed the Project. Doc. 38 at 3. In support of this argument, Plaintiff cites the FPP, which indicates that Plaintiff's "troubling" performance in completing the Project had "impacted the mission of the Command" and the joint proposal, which lists Plaintiff as a Signal Processing Specialist. Doc. 31-7 p.1 ¶ 2; Doc. 34-5 pp. 10-11. That is simply insufficient to support the broad and conclusory assertions that Plaintiff makes. Specifically, this does not support Plaintiff's argument that only he could complete the Project and that the Project was so important that Dr. Crosby and Dr. Commander were forced not to retaliate until completion of the Project.

Federal courts must draw all *reasonable inferences* in favor of the party opposing summary judgment—here, Plaintiff. Courts, however, cannot deny summary judgment based solely on speculation and conjecture. *Cordoba v. Dillard's*

*Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). Because Plaintiff offers only speculation and conjecture in support of his argument, this argument must be rejected for that reason alone.

Regardless, even if it were reasonable to conclude that Dr. Crosby and Dr. Commander waited for Plaintiff to complete the Project before retaliating, Plaintiff completed the project in September 2016. Dr. Crosby placed Plaintiff on the FPP on January 6, 2017, and the Navy terminated Plaintiff's employment on May 3, 2017. This entails more than a three-month interval. As noted above, a three-month interval is insufficient to create a genuine issue as to the causal relationship between the protected expression and the adverse employment actions. *Thomas*, 506 F.3d at 1364; *Higdon*, 393 F.3d at 1221.

Because Plaintiff has not pointed to any evidence which indicates that the alleged acts of retaliation were causally connected to Plaintiff's 2015 EEO complaint, Plaintiff has failed to establish a prima facie case of retaliation under the ADEA. Therefore, Defendant is entitled to summary judgment on that claim.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.     Plaintiff's motion for partial summary judgment be **DENIED**.

2.    Defendant's motion for partial summary judgment be **GRANTED**.

3.    Summary Judgment be **GRANTED** in favor of Defendant on Plaintiff's claim under the CSRA (Count One), his claim of discrimination under the ADEA (Count Two), and his claim of retaliation under the ADEA (Count Three).

4.    The clerk of the court close the case file.

At Pensacola, Florida, this 31st day of January, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**